GUIDRY, J.
12Plaintiffs appeal a judgment rejecting their claims for damages and injunctive relief and declaring the defendant to be the owner of the property to which they claimed ownership. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Crystal A. Smith and Gwendolyn Smith filed a petition for damages against Raymond Felton, Jr. on August 9, 2011, alleging that they were the owners of a tract of land in Iberville Parish bearing the municipal address of 31980 Lacroix Road in White Castle, Louisiana. The plaintiffs claimed that Mr. Felton was misrepresenting that he owned the property, that he had entered onto the property without their permission or consent, and that he intentionally damaged the house located on the property. They further alleged that they suffered property damage and mental distress as a consequence of Mr. Felton’s actions and therefore were seeking injunc-tive relief forever prohibiting Mr. Felton from entering onto the property as well as damages.
*444 Mr. Felton answered the plaintiffs’ petition generally denying their allegations of ownership and trespass. Instead, Mr. Fel-ton alleged that he was the owner of the tract of land and the improvements situated on the property located in Iberville Parish, bearing the municipal address of 31980 Lacroix Road, White, Castle, Louisiana. Mr. Felton further answered to assert that “[o]n knowledge, information and belief, there are dual chains of title to the subject property” and that the common ancestor in title to both the plaintiffs’ title and his was Voltaire Baptiste. Mr. Felton then identified his chain of title as originating from an act of cash sale from Voltaire Baptiste to Norah Williams that was dated and recorded on February 23, 1897. Mr. Felton identified the plaintiffs’ chain of title as originating from an act of cash sale from Voltaire Baptiste to Morris Meyer that was dated August 21, 1899, and that was recorded on August 24, 1899. Thus, Mr. Felton Rprayed for judgment in his favor decreeing him owner and entitled to be maintained in possession of the property in dispute.
A trial on the merits in this matter was held on August 22, 2014, and after taking the matter under advisement, the trial court rendered judgment in favor of Mr. Felton, holding that “Raymond Felton, Jr., his ancestors in title and their agents have been in continuous corporeal possession of the subject property for a period in excess of thirty years and recognizing Raymond Felton Jr. as an owner and as such entitled to be maintained in possession” of the property bearing the municipal address of 31980 Lacroix Road, White Castle, Louisiana 70788. The written judgment in favor of Mr. Felton was signed on July 6, 2015.
In response to the judgment, the plaintiffs filed a motion for new trial,[1] which was denied by the trial court, and this devolutive appeal followed.[2]
DISCUSSION
The plaintiffs’ sole contention on appeal is that the trial court misconstrued the evidence presented at trial to find that the defendant established thirty-year acquisitive prescription of the property in dispute. In particular, plaintiffs argue that Mr. Felton failed to establish a juridical link between his alleged ancestors in | ¿title to himself, whereas they presented evi *445 dence establishing such a juridical link regarding their claim to the property in dispute. At trial, the plaintiffs offered a copy of a May 22, 1984 act of cash sale wherein they purchased from the estate of their mother, Agnes Watkins Smith, the following described property:
A certain lot of land, lying and situated in the Parish of Iberville, and on the west bank of the Mississippi River, in the Village of Dorseyville, and being the eastern one-third of Lot 36 on plan of Dorseyville, on file in the Recorder’s office of Iberville Parish, and measuring 62 1/3 feet front on Julia Street by all the depth between parallel lines of 77 feet more or less or to Lot No. 34 in the rear, bounded front by Julia Street, North or towards the river by Lot No. 34, west by the middle portion of Lot No. 36 reserved by said vendor, and east by Brusly Lecrois Road.
Mr. Felton, on the other hand, offered into evidence an October 20, 1965 judgment of possession,[3] wherein the following described property was acquired by his grandmother and subsequently conveyed to his father, as his grandmother’s sole surviving heir, following the death of his grandmother:
A certain lot or parcel of land lying and situated in the Parish of Iberville, Louisiana, on the right bank of the Mississippi River, in the Village of Dorsey-ville, and being a part of Lot. No. 36 on Dickinson’s Plan of said Village, measur-mg in front on the Brusley Lacroix Road 62 feet by a depth between parallel lines of 60 feet; bounded towards the river by lot of Phenn Bridgewater, on the opposite side by Cross Road No. 2, in front or below by Brusley Lacroix Road, and in the rear by lot of Norah Williams. Acquired as per C.B. 73, E. 56. C.B. 34, E. 207.
Mr. Felton testified at trial that he did not open a succession for his father, but he offered into evidence the obituaries of his father and mother wherein he was listed has their child.[4] It is the plaintiffs’ contention that the foregoing evidence presented by Mr. Felton is insufficient to establish a juridical link whereby he could tack the possession of the property by his parents to establish the requisite thirty years for acquisitive prescription. We disagree.
In this case, because Mr. Felton does not possess an actual title to the property in dispute, in order to prove his claim of ownership, he must establish ownership by acquisitive prescription. A possessor lacking good faith or just title may acquire prescriptive title by possessing the immovable property for thirty years with the intent to possess as owner. See La. C.C. art. 3486; Campbell v. Cerdes, 13-2062, p. 7 (La.App. 1 Cir. 8/10/15), 181 So.3d 41, 47, writ denied, 15-1658 (La. 10/30/15), 180 So.3d 302. Whether a party has possessed property for purposes of thirty-year acquisitive prescription is a fac *446 tual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Campbell, 13-2062 at p. 8, 181 So.3d at 47.
Louisiana Civil Code article 3441 provides that possession can be transferred by universal title or by particular title. The possession of the transferor is tacked to that of the transferee if there has been no interruption of possession. La. C.C, art. 3442. Under Articles 3441 and 3442, an essential prerequisite to tacking possession is privity of contract or estate, sometimes referred to as a “juridical link,” to the property to which the possessor asserts prescriptive title. Campbell, 13-2062 at p. 9, 181 So.3d at 48. Under the general tacking provisions of La. C.C. arts. 3441 and 3442 and their statutory precursors, tacking is only allowed with respect to property that is included and described in the juridical link between the possessor’s ancestor in title and the possessor himself. Brown v. Wood, 451 So.2d 569, 573-74 (La. App. 2d Cir.), writ denied, 452 So.2d 1176 (La. 1984).
The law generally prohibits proof of an interest in immovable property by parol evidence. See La. C.C. arts. 1839 and 2440; Campbell, 13-2062 at p. 12, 181 So.3d at 49. Nevertheless, as previously stated, it has been held that a juridical link for tacking purposes can be established by privity of contract or estate. See Campbell, 13-2062 at p. 9, 181 So.3d at 48. In Noel v. Jumonville Pipe and Machinery Company, 245 La. 324, 336-38, 158 So.2d 179, 184 (1963), the Louisiana Supreme Court gave the following explanation regarding the concept of “privity” in the context of possession and prescription:
Although it has been said that there is no definition of the word ‘privity’ which can be applied in all cases, as most generally defined, and in its broadest sense, ‘privity[1] is the mutual or successive relationship to the same right of property, or such an identification in interest of one person with another as to represent the same legal right.
“Privity’ is also defined as meaning a successive relationship to, or ownership of, the same property from a common source; a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law; a succession of relationships by deed or other act or by operation of law; and is further defined as meaning a derivative kind of interest, founded on, or growing out of, the contract of another.
‘While privity implies succession, it also implies a derivation of title, and exists only because of the relationship between the parties or because of the derivative character of their title. Privity exists where successive relationship of, or ownership to, the same right of property from a common source appears, and it exists between two successive holders when the latter takes under the earlier as by grant, descent, will, or voluntary transfer of possession. Thus, in order to constitute privity between successive occupants of property, all that is necessary is that one receives his possession from the other by some act of such other, or by operation of law. [Emphasis added.]
The court in Noel went on to conclude that the plaintiffs in that ease were entitled to join their possession to that of their ancestor, their father, because “privity” existed between the plaintiffs and their ancestor with respect to 17possession of the property in dispute. The court premised its conclusion on the fact that upon the ancestor’s death, his’ legal heirs, ie., his eight children, were called to his succession by operation of law and being seized of the succession of their father, the children *447 were authorized to continue the possession of the disputed property as if there had been no interruption. Noel, 245 La. at 338— 39, 158 So.2d at 184-85.
Moreover, it has been held that “to hold that privity of estate does not occur except through description of the subject property in the muniments of title connecting the possessors, ignores the effect” of the law of successions. See Richey v. Hill, 84 So.2d 291, 295 (La. App. 2d Cir. 1955). In Richey, the court observed that “[t]he muniments of title found in the [plaintiffs] claim of ownership describe the land in dispute herein but the records supporting the [defendant’s] title do not.” Thus, the court found that the defendant was relegated to proving “title by possession” to establish his claim of ownership of the property in dispute; however, in order to show such possession, it was necessary for the defendant to tack his possession of the disputed property to that of his deceased wife to establish the requisite thirty years of possession. Hence, the question before the court became whether the possession by the defendant’s wife could be tacked to that of the defendant. Richey, 84 So.2d at 293-94.
The issue in Richey involved boundary acquisitive prescription as opposed to general acquisitive prescription. See Odom v. Elliott, 452 So.2d 315, 318-19 (La. App. 2d Cir. 1984)(wherein the court held that “[u]nder the general prescription provisions, that privity of title must encompass the land to which prescriptive title is claimed. Under the boundary prescription provisions, on the other hand, it is sufficient that the requisite privity of title encompass land adjacent to the property to which prescriptive title is claimed.) The appellate court found that the trial court erred in concluding that there was no privity of estate because |sthe judgment in the succession proceedings of the defendant’s wife did not include the tract of land in dispute. Richey, 84 So.2d at 294. Instead, the appellate court observed the principle of succession law that where there is a universal legatee and no forced heirs, the universal legatee is then seized of right of the effects of the succession. Richey, 84 So.2d at 295; see also La. C.C. arts. 934-936. The appellate court rejected the plaintiffs argument that the defendant had to prove that his wife had no forced heirs in order to be accorded the rights of seizen, holding that “[s]uch proof is negative and [the defendant] is entitled to rely on the presumptions which flow from the judgment [of possession].” Thus, the appellate court concluded that as a consequence of the defendant’s claim of seizen of the property of his wife by virtue of being her universal legatee, and there being no forced heirs, there was privity between the estates of the defendant and his deceased wife. Richey, 84 So.2d at 295-96.
Further, it has been held that the law of seizen equally operates to establish possession for purposes of acquisitive prescription, even in the absence of a judgment of possession. In Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La. App. 2d Cir. 1991), the appellate court affirmed the trial court’s finding that the defendants in that matter had obtained title to the land by acquisitive prescription, although a succession was never opened following the death of the defendants’ ancestor in title.
In that case, the defendants were the heirs of the ancestor in title. Livingston, 589 So.2d at 600. On review, the appellate court found that based on the evidence presented at trial, the defendants’ ancestor in title had possessed the property in dispute from the date he purchased the property in 1944, until his death in 1968 or 1969. The court then found that following the death of the defendants’ ancestor in *448 title “and their assumption of ownership of the property, the defendants continued to occupy and use the entire property up to the fence line.” Livingston, 589 So.2d at 602-03. Hence, the court concluded that “[t]he defendants’ testimony established that from 1944 on, they and their ancestor in title ... possessed the property as owners, up to the fence line.” Livingston, 589 So.2d at 603.
Thus, based on the foregoing case law and statutes, we find the trial court was not clearly wrong in finding that Mr. Fel-ton had proven prescriptive title to the property in dispute.[5] See Campbell, 13-2062 at p. 8, 181 So.3d at 47.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s judgment declaring Mr. Felton the owner of the property in dispute and dismissing the plaintiffs’ claims with prejudice. All costs of this appeal are cast to the appellants, Crystal A. Smith and Gwendolyn Smith.
AFFIRMED.

. We observe that in both the original and amended written reasons for judgment, the trial court indicated that the court would sign a written judgment in conformity with its ruling denying the motion for new trial once a judgment was submitted for signature, but no such signed judgment appears in the record before us. The deputy clerk of court, however, did certify that notice of the trial court’s written reasons and amended written reasons for judgment, in which it denied the motion for new trial, was mailed to counsel of record on December 9, 2015, and December 30, 2015, respectively,

. According to the certification that appears on the July 6, 2015 judgment, notice of the judgment was mailed to counsel of record on July 9, 2015, by the deputy clerk of the trial court. The plaintiffs filed a combined motion to enroll new counsel and motion for new trial on July 24, 2015. In that combined pleading, plaintiffs pointed out that notice of the July 6, 2015 judgment was mailed to counsel for the plaintiffs at a North Broad address rather than the address counsel had listed on pleadings filed with the trial court.
While on its face, the motion for new trial appears to be untimely, see La. C.C.P. art. 1974, because the notice sent by the trial court was not mailed to the proper address and the mistake in mailing is not attributable to counsel for the plaintiff, the motion for new trial is deemed timely. See In re Succession of Hendrix, 08-86, pp. 5-6 (La. App. 5th Cir. 8/19/08), 990 So.2d 742, 746, writ denied, 08-2498 (La. 1/9/09), 998 So.2d 729. Thus, the plaintiffs’ motion for devolutive appeal, filed well within the 60-day time period allowed after the ruling on the motion for new trial, is also timely. See La. C.C.P. art. 2087.

. In their brief on appeal, plaintiffs allege that a judgment of possession was not issued to Minerva Sheppard (Mr. Felton’s grandmother) from Walter Sheppard’s estate. However, the October 20, 1965 judgment of possession placed into evidence by Mr. Felton is captioned "Succession of Walter Sheppard and his wife, Minerva Felt Sheppard.” Further, the judgment contains the following decree:
IT IS ORDERED, ADJUDGED AND DECREED that Minerva Felt Sheppard be and she is hereby recognized as the surviving spouse of Walter Sheppard and, as such, entitled to the ownership and possession of any and all property belonging to the community of acquets and gains formerly existing between her and Walter Sheppard and more particularly the property hereinafter described.

. No question has been raised as to whether Mr. Felton is truly the child of Raymond Felton Sr. and Ella Mae Felton.

. Although not expressly assigned as error, in their brief on appeal, the plaintiffs also argue that the legal description for the municipal address 31980 Lacroix Road contained in the July 6, 2015 judgment is incorrect. Instead, they contend the proper legal description is the legal description of the property that the plaintiffs obtained from the succession of their mother. However, during the cross examination of the plaintiffs’ expert witness in civil engineering and land surveying, Charles St. Romain, he admitted that plaintiffs’ property description indicated that their property fronted on what is now referred to as Bucket Drive, whereas the legal description of the property claimed by Mr. Felton indicates the property fronts on Lacroix Road. When further asked if it was possible whether a stake Mr. St. Romain represented as being the northeast corner of the plaintiffs’ property was actually the stake marking Mr. Felton's property, the expert responded "[tjhat’s a possibility, yes.” Further, on re-examination by counsel for the plaintiffs, Mr. St. Romain was asked if Mr. Felton’s property description in any way referred to Dorcy Street, and the expert replied, ”[n]o.”

. See Kathryn Venturatos Lorio, Seizen After the 1997 Revisions, 10 La. Civ. L. Treatise, Successions and Donations § 4:11 (2d ed.).